China Kingdom, Beijing Import v. United States China Kingdom, Beijing Import v. United States In Chao Xiao of Li Anxiao, Attorney's Counsel to Plaintiff's Appellant I started from the issues for this court. The issue is whether the U.S. Court of International Trade, the trial court, correctly upheld a U.S. Department of Commerce decision in the final result of freshwater crawfish tail meat, POR 13-14. In its decision, Commerce rejected two Thai financial statements and used annual reports of a South African... OK, I have some questions for you. Normally I wouldn't be asking you, I'd be asking the Crawfish Processors Alliance, but they're not here, and they raised a jurisdictional question. So I'm going to let both you and the government address this, if you can. They argue the CIT lacked jurisdiction over the surrogate financial ratio issue because of an exhaustion of remedies question. Is the requirement to exhaust remedies jurisdictional? I don't think so. May I have my computer, please? And you might as well look at it in light of boomerang tube. As noted in the U.S. Court of International Trade judgment, the government clarified that it was not asserting the doctrine of administrative exhaustion against the administrative review of plaintiff because Commerce had examined surrogate value jointly for both reviews, relying on the same evidence. Are you aligning your argument with the government on this? In other words, do you believe there was jurisdiction in the CIT? I think there was jurisdiction. I'll ask the government to further develop. Can I continue with the exhaustion doctrine argument? I'm sorry? The exhaustion doctrine? I think he's suggesting that you can continue with your argument on the merits. The issue is whether the U.S. Court of International Trade, the trial court, correctly upheld the U.S. Department of Commerce decision in the final result of freshwater crawfish tail meat, PUR 1314. In its decision, Commerce rejected two Thai financial statements. But Commerce found the Oceania report was contemporaneous with the 2013-2014 period of review. The Thai financial statements were not contemporaneous because they were from 2012. Now, in Albemarle Court, we recognize the statute's manifest preference for contemporaneity in periodic administrative reviews. Does this preference for contemporaneousness support Commerce's selection of Oceania? Commerce selected financial statements. There are other more important requirements. Than the contemporaneous nature? Other than contemporaneous. Contemporaneous problem can be easily corrected by adding the inflation ratios. But the flaws the Oceania report has was impossible. You can't correct it. So our argument is that Oceania's report is unusable. It cannot use it because for a major problem with it. Are you talking about your argument about the lack of breakdown of raw material cost? Yes. The CIT found no party, including Hongda, exhausted the possible misallocation of overhead expenditure argument. Where in your opening brief do you challenge the CIT's finding of failure to exhaust? And if not, why haven't you waived that argument? I'm sorry. I did not get your question. Okay. As I said in the blue brief at 16, you argue unreliability for a lack of breakdown of raw material cost. But the court below found that no party, including your client, exhausted the possible misallocation of overhead expenditure argument. Where in your opening brief do you challenge the CIT's finding of a failure to exhaust? Because I didn't see it. And if not, why haven't you waived that argument? We did not waive that argument.  Where is it in your blue brief? In our opening brief, we argue that Oceana's report is unusable because it does not have separate. And that was the issue. And later when we argue about the cost of sale, there was a detailed support argument for that issue. So we raised that issue in our briefing, in our opening brief. Okay, let me try another question. In the gray brief, in the reply brief, you assert without citation that, I'm quoting, agency precedent establishes that the department rejects the choice of integrated financials to value the financial ratios of non-integrated respondents. What agency precedent supports this? Because you didn't cite any authority in that statement. With it. I'm looking at page five and I don't see any citation. It's the bottom of the page and runs over to six. And the next sentence begins, following such precedent. But there's no citation to any precedent. Okay. I was hoping you could give me some oral argument. I have to look at the back of my brief. Okay. If we disagree with you regarding the surrogate financial ratio issue, do you concede that your argument about recalculating Ocean Flavor's separate rate is moot? I'm sorry, can you repeat that? Okay. If we disagree with you regarding the surrogate financial ratio issue, do you agree with me that your argument about recalculating Ocean Flavor's separate rate would be irrelevant? It wouldn't apply anymore? That's agreed. Okay. Sure. Okay. Our argument is that the U.S. CIT's decision to uphold the Commerce Final Determination was not supported by the substantial evidence in the record and was not in accordance with law and thus should be reversed by this court. 19 U.S.C. 1677B-C-1 requires that the Commerce to evaluate the factors of production in a non-market economy based on the best available information. The purpose of this statutory provision is to determine anti-dumping margins as accurately as possible. Cited from shape proof assembly components versus U.S. is appendix 651 through 652. So the best evidence, best available information is the information based on which... Ms. Zhao? Yes. When it came to the Thai financial statements, there was clearly a distortion there. Those companies were receiving government subsidies. Yes. So the Commerce went to an alternative surrogate with the Oceana report from South Africa. What were the defects in your view with that report that made that report less reliable than the distortion with the Thai financial statements? Okay. Commerce has to balance the two. Right, so what was the problem with the Oceana report? The Oceana report, as we stated in our argument, it does not have a specific line for raw material and labor. Raw material is the most important cost in the production of this product. And the lack of an accurate amount or value of labor. We don't know how the Commerce calculates the overhead. Overhead is one of the three regions in the surrogate normal value. And the Commerce calculates the overhead by using the cost of sale as the raw material, labor, and energy. To calculate overhead. But cost of sale contains a component of overhead. Where did you present that below? I'm sorry? Where did you present that misallocation of overhead expenditures argument below? Show us in the record. Because in the, this is what I was trying to get to with you before. In the CIT's opinion, the judge says, Weishen did not present to Commerce in the first instance its argument about possible misallocation of overhead expenditure, inflation of the amount for raw materials by some amount, unspecified amount for the cost of goods purchased for trading, or the incomparability of Oceana Group's business and production experiences. Weishen certainly had noticed that Commerce might rely on the Oceana report. And it says, while Weishen sought to rebut CPA's argument, it did not take an opportunity to raise all the arguments they now raise to this court. And then the court cited to Boomerang 2, to which I referenced you before, rejecting Appellant's attempt to raise arguments that had not been exhausted before the agency. So my question is, how do we get to even hear this argument? Okay, the trial court, the CIT, in its judgment, clearly stated that the government clarified that it was not asserting the doctrine of administrative exhaustion against the anti-dominant view. So this court should respect that decision and not to raise the doctrine of exhaustion. Okay, well we're pretty much out of time here. We'll give you a couple minutes for rebuttal. You need to sit down now. You need to sit down now. Your time has expired. So I... You should sit back at the council. Ms. Finnan? Ms. Finnan? May it please the court, Plaintiff Appellants, China Kingdom, Diane Aquatic, and Ocean... To what extent are you relying on administrative exhaustion, lack of administrative exhaustion? So there's two issues with the Exhaustion Administrator Remedy's argument, and it is where the government departs from intervener in terms of arguments. At the trial court, at the trial court and here, the United States government... Do you view exhaustion as being a non-jurisdictional issue? No, I believe it is a jurisdictional issue. It is a jurisdictional issue? It is a jurisdictional issue, but it's... What case says it's a jurisdictional issue? And how do you deal with Boomerang 2? Well, it's a jurisdictional issue, but it's fact-dependent, right? No, no, the question is whether it's waivable. Is it a jurisdictional issue? It's applicable, whether we call it waivable or applicable in appropriate circumstances, the statute provides that exhaustion... Is it jurisdictional in the sense that it is not waivable? Yes, it's not waivable. It is not waivable? What case says that? Boomerang 2 said the exact opposite. I'm sorry, I'm not following your... Okay. Okay. Let me quote... We have... This is from United States v. NITIC. We have explicitly held... The CIT may waive the requirement at the court's discretion. Well, then I correct myself. It is not jurisdictional. Okay. It is under statute applicable when a program... So did you waive the suggestion that this issue of exhaustion with respect to the two separate proceedings was not something the government wanted to assert? That is correct. Okay, and what about with respect to the overhead issue? With respect to the overhead issue, there was a failure to exhaust. Did you raise that? At the CIT, yes, we did. And are you still arguing that? Yes, we are. Okay. So we took the position that there was no failure to exhaust with respect to any distinction between the new shipper review and the administrative review because Commerce had effectively treated the two reviews at the administrative level as not just aligned but combined for all intents and purposes. It issued one opinion. It issued its orders combined of both proceedings. So we took the position at the Court of International Trade that it was not appropriate to argue an exhaustive administrative remedies with respect to any distinctions between a new shipper review and the administrative review. That said, exhaustive administrative remedies is still a requirement with respect to subject-specific arguments. And so we did argue the exhaustion issue with respect to the double counting of manufacturing overhead, differences in production processes, and... It hadn't been raised. Right, because those arguments had not been raised at the administrative level by any party. Weishen Hongda, who is a plaintiff below and not an appellant here, had raised only one, in relevant part, only one argument with respect to the Oceana report, which was the alleged basket cost of sales. And so with respect to that argument, that argument, there was no failure to exhaust, which is the Court of International Trade appropriately found and what brings us here now. With respect to Commerce's determination, this Court refutes de novo. We believe that substantial evidence does support Commerce's finding that the Oceana report from South Africa was the best available information on which to measure surrogate financial ratios. You're weighing contemporaneous nature versus other factors? Yes, we are. And with regards to Plaintiff Appellant's argument that Commerce made that determination in too much of a summary basis without a reasoned decision, we have taken issue with that, as we explained in our brief. Commerce did not summarily reject the Thai statements on the mere basis of export, non-available export subsidies. It also found that those Thai statements were not contemporaneous with the period of review by approximately eight months. And it further found that relying on those Thai statements, it could do so, but it would require Commerce to depart from its normal methodology in valuing all the overhead ratio. In contrast, when compared to the Oceana report from South Africa, South Africa was also a significant producer of comparable merchandise, as was Thailand. So it met that basic criteria. And then the South Africa report was contemporaneous with the period of review. It was not tainted by countervailable subsidies. What about this cost of sales category that didn't sufficiently disaggregate the cost of sales into all these little subcategories that the other side is pointing out? So that was Planoff's argument. The record disputes it to some extent, and that's at Appendix 704. There is a spreadsheet that outlines Oceana report's expenses. And what it does is it has a cost of sales basket category, which includes materials, labor, and expenses. But further down on the spreadsheet, it breaks out materials and labor and expenses, and energy, excuse me, and provides that energy is zero. But even so, factually, I don't think the allegation is factually correct. I mean, the statement does say zero for energy, but there is that breakout in the financial statement. But even if there were not that breakout, Commerce found that any weakness in disaggregation in materials, labor, and expenses was not material for their purposes in the overhead ratio, because the overhead ratio equals total cost of overhead divided by materials plus labor plus expenses. So even if it's plus energy, even if energy is not disaggregated from labor and material, it doesn't ultimately matter for Commerce's calculation purposes because those three values are added together in a denominator for the overhead ratio. So even to the extent it was or could be a weakness, it wasn't a material one and wasn't as bad relative to the non-contemporaneous export subsidy-tainted material in the Thai financial statements. Okay, anything else? No, I guess the panel has no further questions. I guess that this court sustains in Commerce's determination to affirm the trial court. Okay, thank you, Ms. Finn. Ms. Schall, you have two minutes. In weighing of the two sets of financial documents, Oceana's annual report, the flaw of the annual report is much, much more than the flaw with the Thai financial statements. Well, that's a matter of opinion, though, isn't it? That's our argument. Okay. Yeah, because the separate line for raw material and the labor is very important. The way Commerce calculates the ratio, as I described, that's fatal because it's against the law for the accuracy of financial ratio, normal value. And for the flaws, as government pointed out, with Thai financial statements, one is the contemporaneousness. Doesn't the agency have discretion to weigh the accuracy of one source against the accuracy of another source and factor in the competing problems with each? Yes. Yes, Your Honor, they did. But they have to do it according to the law. They can't just do it anyway, as what they will to do. They have to— there must be a guidance from the law, from the statute. And statute says that, first, you have to use the documents or the information to make a decision as accurate as possible. So that's one. And the other is that the policy of Commerce to prefer to use separate lines for materials and labor instead of a comprehensive cost of sales and double calculate the overhead has caused a higher dumping rate and a dumping duty rate for our clients, for the plaintiffs. Yes, they have a discretion, but under the guidance of the law. It's not a free will. Okay, thank you. I think we're out of time. Thank you, Ms. Zhao. Thank both counsel. The case is submitted.